1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

DAVID TYRONE NOBLE,

12

Petitioner,

13
14

vs.

15

G. J. GIURBINO, Warden,

16

Respondent.

17

Civil No.   06cv1625-WQH (CAB)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF MOTION FOR  EVIDENTIARY HEARING AND DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

18
19
20
21

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**I.**

22

**FEDERAL PROCEEDINGS**

23
24
25
26
27
28

David Tyrone Noble (hereinafter "Petitioner"), is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)  Petitioner was convicted in the San Diego County Superior Court of inflicting great bodily injury while driving under the influence of alcohol, hit and run driving causing injury, and driving with a suspended license, and claims that he received ineffective assistance of counsel when defense counsel failed to present evidence that the accident was caused by a

passenger rather than Petitioner (claim one), and that a new trial is warranted based on newly discovered evidence that the passenger caused the accident (claim two).

Respondent has filed an Answer to the Petition, accompanied by a Memorandum of Points and Authorities in support, and has lodged portions of the state court record. (Doc. No. 6.) Respondent contends that Petitioner is not entitled to habeas relief because the state court's denial of his claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Petitioner has filed a Traverse. (Doc. No. 7.) Petitioner has also filed a Motion for an Evidentiary Hearing. (Doc No. 9.) Respondent has filed an Opposition to Petitioner's Motion. (Doc. No. 11.)

For the following reasons, the Court finds that Petitioner is not entitled to habeas relief as to any claim presented in the Petition, and that the claims can be resolved without an evidentiary hearing. The Court therefore recommends that Petitioner's Motion for an Evidentiary Hearing be **DENIED** and that the Petition be **DENIED**.

## II.

## STATE PROCEEDINGS

In a four-count Second Amended Information filed in the San Diego County Superior Court, North County Division, on June 3, 2002, Petitioner was charged with driving under the influence of alcohol causing injury with a prior driving under the influence conviction within the last seven years, in violation of Cal. Vehicle Code section 23153(a) (count one); driving with a blood alcohol level of 0.08 percent or more with a prior driving under the influence conviction within the last seven years, in violation of Cal. Vehicle Code section 23153(b) (count two); hit and run with injury in violation of Cal. Vehicle Code section 20001(a) (count three); and driving with a license suspended for a prior driving under the influence conviction in violation of Cal. Vehicle Code section 14601.2(a) (count four). (Lodgment No. 1, Clerk's Tr. at 6-9.) The Information also alleged that Petitioner had proximately caused injury to five victims, personally inflicted injury on two victims, and had suffered one prior felony conviction which constituted a "strike" under California's Three Strikes law. (Id.) On June 7, 2002, a jury found Petitioner guilty on counts one, three and four. (Id. at 78-83.) The jury also found true the allegations that

Petitioner had proximately caused bodily injury to five victims, and had personally inflicted great bodily injury on two victims. (Id. at 79.) A mistrial was declared as to count two after the jury could not reach a verdict on that count, and it was later dismissed. (Id. at 147.) Petitioner waived his right to a jury trial as to the prior conviction allegation, and admitted he had suffered a prior serious felony conviction. (Id. at 148.) On July 22, 2002, Petitioner was sentenced to nine years and four months in state prison. (Id. at 211-13.)

Petitioner appealed his convictions to the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment No. 4.) The appellate brief presented no arguable appellate issues, but instead requested the court to review the record for errors pursuant to People v. Wende, 25 Cal.3d 436 (1979), and identified possible but not arguable appellate issues pursuant to Anders v. California, 386 U.S. 738 (1967), including whether there was sufficient evidence to support the convictions, and whether the trial court abused its discretion in denying Petitioner's request to strike his prior felony conviction. (Lodgment No. 4.) Petitioner filed two supplemental pro se briefs raising claim one presented in his federal Petition here. (See Lodgment No. 11, People v. Noble, No. D040733, slip op. at 4 (Cal. Ct. App. Oct. 14, 2003).) Petitioner contemporaneously filed a habeas petition in the appellate court raising claim two presented here, which was consolidated with his direct appeal. (Lodgment Nos. 6-7.) The convictions were affirmed on direct appeal on the basis that there were no reasonably arguable appellate issues. (Lodgment No. 11, People v. Noble, No. D040733, slip op. at 4.) The appellate court also indicated that the claims presented in the supplemental briefs should have been presented to the trial court in a habeas petition in the first instance, and denied the habeas petition without prejudice to Petitioner to present the claims to the trial court in a habeas petition. (Id.; Lodgment No. 12, In re Noble, No. D041799, slip op. at 1 (Cal. Ct. App. Oct. 14, 2003).)

Petitioner thereafter filed a habeas petition in the state superior court presenting claim one here, alleging that trial counsel failed to properly investigate, and that the failure to investigate resulted in counsel's failure to introduce letters written by the passenger prior to trial admitting that she caused the accident by grabbing the steering wheel, or use the letters to impeach the passenger when she testified that she could not remember if she had caused the accident. (See

Lodgment No. 15, Ex. K.)  In response to an order to show cause, Petitioner's trial counsel submitted a declaration explaining why he did not introduce a letter he had been given by Petitioner written by the passenger implying that she caused the accident. (Id., Ex. L.)  Defense counsel said he did not use the letter because the passenger had testified consistently with her statement before trial that she could not remember if she had grabbed the steering wheel, because any attempt to impeach her would say to the jury that she was inconsistent and therefore not credible, because the letter would not be admitted for the truth of the statements it contained, and because counsel harbored doubts that the letter had actually been written by the passenger. (Id. at ¶ 5.)  The superior court denied the petition on the basis that defense counsel's decision not to introduce the letter was an informed choice among tactical alternatives, and because Petitioner could not demonstrate prejudice from the failure to introduce the letter. (Id., Ex. M, In re Noble, No. HCN0756, slip op. at 3 (Cal. Sup. Ct. Jan 25, 2005).)  Petitioner thereafter filed a habeas petition in the state appellate court raising both claims presented in the federal Petition here. (Lodgment No. 13.)  That petition was denied in a written order for essentially the same reasons given by the superior court. (Lodgment No. 14, In re Noble, No. D046401 (Cal. Ct. App. July 11, 2005).)  Petitioner thereafter filed a habeas petition in the California Supreme Court raising the same claims. (Lodgment No. 15.)  That petition was denied by an order which stated in full: "Petition for writ of habeas corpus DENIED." (Lodgment No. 16, In re Noble, No. S136148, slip op. at 1 (Cal. June 14, 2006).)

## III.

## UNDERLYING FACTS

The following statement of facts is taken from the appellate court opinion affirming Petitioner's conviction on direct review.  This Court gives deference to state court findings of fact and presumes them to be correct.  28 U.S.C. § 2254(e)(1); see also Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

At approximately 5:00 p.m. on August 18, 2001, Noble was driving east on Highway 78 when he swerved across the lanes and collided with a van occupied by a woman and her children.  The van rolled over and both vehicles ended up in a ditch.  A passenger in a car that was in the number two lane testified that he saw

Noble turn the steering wheel hard like he (Noble) was trying to make the off ramp. A woman riding with Noble broke her arm and the driver of the van sustained neck, shoulder and back injuries. Noble got out of the car he was driving, jumped a fence and left. He said "something like" he would be right back but did not identify himself to anyone before leaving. He called a woman friend and asked her to pick him up. He did not say he had been in a collision. Around 5:30 p.m., a sheriff's deputy contacted Noble in a nearby strip mall. A responding highway patrol officer noticed that Noble had abrasions and complained of pain. Noble denied being on the freeway and said he sustained the injuries in a fight. An odor of alcohol emanated from Noble, he was unstable on his feet and his eyes appeared glassy. The highway patrol officer believed him to be under the influence of alcohol and arrested him. At 7:05 p.m., Noble showed a blood/alcohol level of .06 percent. A sheriff's ciminalist testified that given the burn-off rate, Noble had a blood/alcohol level of around .09 percent at the time of the collision. Noble stipulated his driver's license was suspended at the time of the collision.

Noble testified. He admitted driving the red car at the time of the collision but claimed the passenger grabbed the steering wheel during an argument. He testified that he drank gin and wine the night before the collision but nothing during that day. He testified that he was dizzy after the collision and told his passenger that he was going to get help.

(Lodgment No. 11, <u>People v. Noble</u>, No. D040733, slip op. at 2-3.)

**IV.**

**<u>PETITIONER'S CLAIMS</u>**

1. Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment because defense counsel failed to properly prepare for trial, which resulted in the failure to introduce letters written by the passenger prior to trial admitting that she caused the accident by grabbing the steering wheel. (Pet. at 6.)

2. Newly discovered evidence, which consists of letters written by the passenger after trial accepting responsibility for the accident, warrants a new trial. (Pet. at 7.)

**V.**

**<u>DISCUSSION</u>**

For the following reasons, the Court finds that the state court's adjudication of claim one involved an unreasonable application of clearly established federal law. However, the Court finds that Petitioner is not entitled to habeas relief because he has not demonstrated prejudice resulting from the failure to introduce the letters at trial, and he therefore did not receive constitutionally ineffective assistance of counsel. The Court finds that Petitioner is not entitled

06cv1625

1  to habeas relief as to claim two because the state court's adjudication of the claim was neither

2  contrary to, nor involved an unreasonable application of, clearly established federal law, and was

3  not based on an unreasonable determination of the facts in light of the evidence presented in the

4  state court proceedings.  The Court also finds that Petitioner's claims can be resolved without

5  conducting an evidentiary hearing.  The Court therefore recommends that Petitioner's Motion

6  for an Evidentiary Hearing be **DENIED**, and that the Petition be **DENIED**.

7  **A.      Standard of Review.**

8       Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district
> court shall entertain an application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in <u>violation of the
> Constitution or laws or treaties of the United States.</u>

12  28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

13       Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim—
>     (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

20  28 U.S.C.A. § 2254(d) (1)-(2) (West 2006).

21       A state court's decision may be "contrary to" clearly established Supreme Court

22  precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the

23  Court's] cases" or (2) "if the state court confronts a set of facts that are materially

24  indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

25  from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  A decision

26  may involve an "unreasonable application" of clearly established federal law, "if the state court

27  identifies the correct governing legal rule from this Court's cases but unreasonably applies it to

28  the facts of the particular state prisoner's case," or "if the state court either unreasonably extends

1  a legal principle from precedent to a new context where it should not apply or unreasonably

2  refuses to extend that principle to a new context where it should apply." Id. at 407.

3      "[A] federal habeas court may not issue the writ simply because the court concludes in

4  its independent judgment that the relevant state-court decision applied clearly established federal

5  law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."

6  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

7  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United

8  States Supreme] Court's decisions." Williams, 529 U.S. at 412.

9      Habeas relief is also available if the state court's adjudication of a claim "resulted in a

10  decision that was based on an unreasonable determination of the facts in light of the evidence

11  presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this

12  provision, Petitioner must demonstrate that the factual findings upon which the state court's

13  adjudication of his claims rest, assuming they rest on a factual determination, are objectively

14  unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

15  **B.    Petitioner is not entitled to habeas relief as to claim one.**

16      In claim one, Petitioner contends he received ineffective assistance of counsel in violation

17  of the Sixth Amendment because defense counsel failed to properly prepare for trial, which in

18  turn caused counsel to fail to introduce evidence that the accident was caused by the passenger

19  in the car Petitioner was driving, who grabbed the steering wheel. (Pet. at 6.) Specifically,

20  Petitioner alleges that the passenger, Tracy Evans, told defense counsel prior to trial that she was

21  responsible for the accident because she grabbed the steering wheel during an argument and

22  caused the car to swerve and hit the van. (Id.) Petitioner contends that defense counsel did not

23  contact Evans again and did not introduce several letters written by Evans accepting

24  responsibility for the accident. (Id.) Respondent contends the state appellate court's denial of

25  this claim, on the basis that defense counsel had a sound tactical reason for not introducing the

26  only letter he was in possession of, an unsigned, undated, hand-printed note, was neither contrary

27  to, nor involved an unreasonable application of, clearly established federal law. (Memorandum

28  of Points and Authorities in Support of Answer ["Ans. Mem."] at 8-9.)

1    Petitioner presented claim one to the state supreme court in a habeas petition. (Lodgment

2  No. 15.) That petition was denied by an order which stated in full: "Petition for writ of habeas

3  corpus DENIED." (Lodgment No. 16, In re Noble, No. S136148, slip op. at 1 (Cal. June 14,

4  2006).) Claim one was also presented to the state appellate court in a habeas petition.

5  (Lodgment No. 13.) That petition was denied on the merits in a written order. (Lodgment No.

6  14, In re Noble, No. D046401 (Cal. Ct. App. July 11, 2005).)

7    In Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which

8  gives no effect to unexplained state court orders but "looks through" them to the last reasoned

9  state court decision. The Court will therefore look through the silent denial by the state supreme

10  court to the appellate court opinion. The appellate court stated:

11      The record shows Evans and Noble had a long-term relationship and have
       a child together. At trial, Noble admitted he was the driver, he had consumed
12      alcohol the night before the collision and he left the scene to get help. Noble
       testified he and Evans argued as he drove and she jerked the steering wheel in
13      anger. Evans testified she may have grabbed and jerked the wheel.

14      In response to an order to show cause issued by the superior court,
       Washington [defense counsel] declared he interviewed Evans before trial and she
15      had difficulty remembering the events leading to the accident. Washington
       received an unsigned handwritten letter purporting to be from Evans that stated
16      she remembered "reaching over at (Noble) which caused the accident."
       Washington explained to Noble that he could not "just introduce the letter at trial"
17      but that he could cross-examine Evans if she testified. In response to
       Washington's questions at trial, Evans testified it was possible that she might have
18      grabbed the wheel. Washington decided not to attempt to impeach her with the
       letter because after hearing Evans testify, he was concerned the letter he received
19      might not have been written by Evans because it was unsigned, printed in pencil,
       worded inconsistently with Evans's speech and "contained a reference to a
20      memory that Ms. Evans claimed in court she did not have."

21      Washington was not ineffective because he investigated Evans and had a
       sound tactical reason not to introduce the unsigned letter. The other letters Noble
22      attached to his petition are undated, unsigned, in various differing handwriting
       and/or generated after judgment was pronounced. Noble has not shown that but
23      for counsel's purported errors, he would have achieved a more favorable result.

24  (Lodgment No. 14, In re Noble, No. D046401, slip op. at 1-2.)

25    The clearly established United States Supreme Court law governing ineffective assistance

26  of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Baylor v.

27  Estelle, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that Strickland "has long been clearly

28  established federal law determined by the Supreme Court of the United States"). For ineffective

assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things. First, he must show that counsel's performance was deficient. <u>Strickland</u>, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> Second, he must show counsel's deficient performance prejudiced the defense. <u>Id.</u> This requires showing that counsel's errors were so serious they deprived Petitioner "of a fair trial, a trial whose result is reliable." <u>Id.</u> To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. <u>Williams</u>, 529 U.S. at 406; <u>Strickland</u>, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel can not be shown by a preponderance of the evidence to have determined the outcome."). The prejudice inquiry is to be considered in light of the strength of the prosecution's case. <u>Luna v. Cambra</u>, 306 F.3d 954, 966 (9th Cir.), <u>amended</u>, 311 F.3d 928 (9th Cir. 2002).

Evans testified at trial that she remembered traveling in the number one lane of Highway 78 heading east towards Escondido approaching the Sycamore exit in a car driven by Petitioner, and remembered that she and Petitioner were having a discussion which "was not calm" but was not "hostile" either, but did not remember anything after that until someone asked her if she was okay. (Lodgment No. 3, Reporter's Tr. at 21-24.) On cross-examination by defense counsel, she testified as follows:

Q: Other than the fact that you remember being in the first lane and then someone asking "are you okay," are there any pieces in between there that you recall?

A: Not really, no.

Q: When you say "not really," does that mean there are some pieces but you don't think they're significant or there isn't anything, it's completely black?

A: Anything I remember, I don't know the exact order of all of it. There may be something that happened before and I could associate it with that day. I am not sure, but I remember being in the car and then I remember the hospital. Those are definite memories.

Q: Let me ask it this way: You recall being in the car and you recall being in the conversation with Mr. Noble?

A: Right.

Q:   You recalled that the conversation might have been more than calm; correct?

A:   Correct.

A:   Do you recall arguing with Mr. Noble about who he had been with the night before?

Q:   No.

A:   Do you recall arguing with Mr. Noble about where you were going and where he was going after he took you to his Mom's?

A:   I may have been talking about that.

Q:   Do you recall telling Mr. Noble "just let me out here?"

A:   I may have said "you can just let me out."

Q:   You recall grabbing the steering wheel when he didn't stop to let you out?

A:   I can't say for sure I grabbed the wheel.

Q:   When you say you "can't say for sure," does that mean you might have grabbed the wheel?

A:   If I did I can't remember it.

Q:   And if you grabbed the wheel, you can't recall that's what caused the car to go across two lanes and cause an accident; correct?

A:   Correct.

(Id. at 33-34.)

The record contains a copy of defense counsel's declaration. (Lodgment No. 15, Ex. L.) Attached to the declaration is the letter which counsel states was given to him by Petitioner before trial. The letter is hand-printed, unsigned and undated, and states:

> To whom it may concern.
>
> My name is Tracy Evans and I was the passenger in the car with Darrell. I'm remembering the accident now and I remember reaching over at him which caused the accident.
>
> I am truly sorry for all the hurt and trouble that I caused. I know my arm is broke because of this but that is no excuse for all the trouble and pain I caused please forgive me. As far as punishment goes punish me not Darrell.

(Id., Attachment 1.)

Defense counsel stated in his declaration that he was asked by Petitioner if he would use the letter to impeach Evans, and he told Petitioner he would not because Evans had testified

consistently with her statement before trial that she could not remember if she grabbed the wheel, because any attempt to impeach her would say to the jury that she was inconsistent and therefore not credible, and because the letter would not be admitted for the truth of the statements it contained, as that was not the point of impeachment. (Lodgment No. 15, Ex. L at ¶ 5.) Defense counsel also stated in the declaration that he did not at that time tell Petitioner that he was concerned that the letter might not have been written by Evans because: 1) it was unsigned, 2) it was written in pencil, 3) it was printed, 4) the wording used seemed inconsistent with the way she spoke, and 5) it contained reference to a memory that she claimed in court she did not have. (Id.)

Petitioner contends he provided defense counsel, seven months before trial, with "several letters explaining how sorry [Evans] was for causing the accident and putting petitioner in jail." (Pet. at 6.) Petitioner attaches a copy of the letter quoted above, as well as another letter, which is hand-printed and undated, but which Petitioner contends was included in the same envelope as the first letter, which he received in October 2001. (Pet.'s Mot. for Evidentiary Hearing, Exs. B-C.) The other letter states in relevant part:

> Tell your lawyer that I don't care what happens to me as long as I'm able to keep my kids. So if I have to leave for a while I can get them back without any problems. Tell him we got into an argument and I wanted to get out you wouldn't let me. I try [sic] to make you get off and let me out [sic] the car by grabing [sic] the wheel. I deserve to be punished not you.

(Id., Ex. B at 3.)

There is no mention of this letter in defense counsel's declaration. However, the two letters convey the same basic message, that Evans felt responsible for the accident because she reached over and grabbed the steering wheel. Although Petitioner refers to "several letters" written before trial, these are the only two letters purportedly written before trial which Petitioner has submitted and referenced in the Petition.

Petitioner submits a copy of a letter written by defense counsel and addressed to Petitioner, dated about seven months before trial, in which counsel acknowledges speaking to Evans on the telephone, at which time Evans told counsel that she is starting to remember some things and suggested that counsel read the letter she sent to Petitioner. (Id., Ex. A.) There is no

mention in defense counsel's declaration of any attempt by counsel to authenticate the letter which he admits he was in possession of prior to trial.

Petitioner presents here, as he did in the state courts, notarized copies of two letters from Evans dated February 18, 2003 and September 23, 2003, after Petitioner was convicted and sentenced, admitting she caused the accident by grabbing the steering wheel.  (Id., Exs. E-F.) Petitioner presents a total of eleven letters purportedly written by Evans.  In addition to the two written before trial and the two notarized letters written after sentencing just discussed, there is a letter dated June 24, 2002, addressed to the trial judge and considered by the judge at Petitioner's July 9, 2002 sentencing hearing, which is the first letter signed by Evans, and which contains a phone number and a fax number, and states:

> Judge Maino,
>
> Sir, I'm writing you asking that you would please show mercy on Darrell Noble.  I'm asking that you not judge him according to his past.  I'm asking that you would not judge him from a past that had no future.  Even at the time of the accident Darrell was trying to make changes in his life so that he would have a future.  I know you only have in front of you a profile of a person who is not so good by [sic] I know the complet [sic] person and thats [sic] why I'm asking that you show mercy and allow Darrell to have a future.
>
> Please don't punish him for something that was my fault in more was [sic] than one.  [¶]  Thank you for hearing me.

(Lodgment No. 2, Clerk's Tr. at 9-10.)

The remaining letters include a hand-written letter signed by Evans dated January 23, 2002; a hand-printed letter dated January 3, 2004, addressed to "Your Honor" which appears to be certified; an undated hand-printed letter addressed to Petitioner and signed by Evans; two hand-printed letters dated September 1, 2002 and September 8, 2002, addressed to Petitioner and signed by Evans; and a hand-written letter dated February 10, 2005, addressed to the trial judge. (Pet.'s Mot. for Evidentiary Hearing, Exs. D, G-J, N.)  Thus, the earliest authenticated statement by Evans admitting that she caused the accident by grabbing the steering wheel is the February 18, 2003 certified letter, which is dated nearly seven months after Petitioner was sentenced.  (Id., Ex. E.)  The record supports the findings by the appellate and trial courts that the wide variety of the handwriting and printing of these letters raises concerns about whether they were all

written by Evans.  However, the record does not contain an explanation as to why defense counsel did not authenticate the pre-trial letter he was in possession of by simply asking Evans prior to trial if she was the author.  Evans was Petitioner's girlfriend at the time and was apparently cooperating with the defense.  Defense counsel acknowledged in the letter he wrote to Petitioner seven month before trial that he had spoke with Evans at Petitioner's suggestion, and was told by Evans that: "she is starting to remember some things and she suggested that I read the letter she sent to you first."  (Id., Ex. A.)  Counsel also stated in that letter that even if Evans could be shown to be responsible for the crash, and they could challenge the DUI charge on that basis, his concern was that Petitioner would still be convicted of the hit and run charge, and stated that he would "share [the letter] with the District Attorney and see if we can get a better offer."  (Id.)  Thus, even though defense counsel was understandably skeptical of the authenticity of the letter, counsel's stated reasons for believing that the letter may not have been written by Evans appears to have been based on an incomplete investigation, or, as Petitioner alleges in the Petition, based on a lack of pretrial preparation.  (Pet. at 6.)  The failure to authenticate the letter is troubling, particularly in the face of Evans' statement to defense counsel to read her letter, and in light of the fact that defense counsel was in contact with Evans at least twice before trial.

The appellate court found that defense counsel had a sound tactical reason for not using the letter to impeach Evans, stating that:

> Washington [Defense counsel] decided not to attempt to impeach her with the letter because after hearing Evans testify, he was concerned the letter he received might not have been written by Evans because it was unsigned, printed in pencil, worded inconsistently with Evans's speech and "contained a reference to a memory that Ms. Evans claimed in court she did not have."
>
> Washington was not ineffective because he investigated Evans and had a sound tactical reason not to introduce the unsigned letter.  The other letters Noble attached to his petition are undated, unsigned, in various differing handwriting and/or generated after judgment was pronounced.  Noble has not shown that but for counsel's purported errors, he would have achieved a more favorable result.

(Lodgment No. 14, In re Noble, No. D046401, slip op. at 1-2.)

The appellate court's finding that defense counsel had a sound tactical reason for not using the letter to impeach Evans because counsel was concerned that the letter was not

06cv1625

1   authentic, is objectively unreasonable. The record contains no explanation for defense counsel's

2   failure to authenticate the letter. Although Evans wrote a letter to the trial judge at sentencing

3   in which she said the accident was her fault "in more ways than one," the first authenticated

4   admission that she grabbed the steering wheel is the notarized letter written nearly seven months

5   after Petitioner was sentenced. The delay in authenticating the pre-trial letter in which Evans

6   states she "remember[s] reaching over at him which caused the accident," can, on the present

7   state of the record, only be attributed to defense counsel's failure to confront Evans prior to trial

8   and ask her whether or not she wrote the letter. The Court could speculate that defense counsel

9   did not want to risk confirming that Petitioner had forged the letter, as counsel obviously

10  suspected, and/or did not what to confirm the obvious suspicion that although Evans was perhaps

11  willing to aid Petitioner by stating in an unsigned letter that she grabbed the wheel, and was

12  willing to make a vague reference to her responsibility in a signed letter written to the judge at

13  sentencing, she was unwilling or unable to testify to such a fact in court, either because it was

14  false or because she did not want to admit fault and risk any concomitant liability. However, the

15  record at this time does not support a finding, one way or the other, whether counsel's decision

16  not to confront Evans with the letter before trial was based on sound trial strategy or was the

17  product of a lack of pre-trial preparation as alleged by Petitioner. The record is clear that Evans

18  did not admit in an authenticated writing before Petitioner was convicted, or under oath at trial,

19  that she grabbed the steering wheel and caused the accident. Defense counsel's failure to

20  authenticate the letter prior to trial placed counsel in a position where the decision whether or

21  not to use the letter to impeach Evans was made without knowledge of whether the letter was

22  authentic. Thus, based on the current state of the record, the appellate court's finding that

23  defense counsel investigated Evans and had a sound tactical reason for not using the letter based

24  on counsel's concern the letter was not authentic, is objectively unreasonable within the meaning

25  of 28 U.S.C. § 2254(d).

26          However, such a finding does not entitle Petitioner to federal habeas relief, but is merely

27  a procedural hurdle passed by Petitioner. See Fry v. Pliler, 552 U.S. ___, 127 S.Ct. 2321, 2327

28  (2007) (holding that § 2254(d) "sets forth a precondition to the grant of habeas relief . . ., not an

1   entitlement to it.")  In order to receive habeas relief in this Court, Petitioner must show that he

2   received ineffective assistance of counsel which rose to the level of a federal Constitutional

3   violation.  Id.; Strickland, 466 U.S. at 687-89.  In addition to demonstrating that counsel was

4   deficient in failing to authenticate the letter prior to trial and using it to impeach Evans,

5   Petitioner must also establish that he was prejudiced by counsel's error in order to demonstrate

6   that he received constitutionally ineffective assistance of counsel.  Strickland, 466 U.S. at 687.

7   Because, for the following reasons, the Court finds that Petitioner was not prejudiced by

8   counsel's alleged error, the Court does not need to conduct an evidentiary hearing to determine

9   counsel's reason for failing to authenticate the letter.  See Bashor v. Risley, 730 F.2d 1228, 1233

10  (9th Cir. 1984) (holding that an evidentiary hearing is not required on issues which can be

11  resolved on the basis of the state court record).

12        In order to demonstrate prejudice arising from defense counsel's failure to impeach Evans

13  with the letters she wrote before the trial began, Petitioner need only demonstrate a reasonable

14  probability that the result of the trial would have been different absent the error.  Williams, 529

15  U.S. at 406; Strickland, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable,

16  and hence the proceeding itself unfair, even if the errors of counsel can not be shown by a

17  preponderance of the evidence to have determined the outcome.").  The prejudice inquiry is to

18  be considered in light of the strength of the prosecution's case.  Luna, 306 F.3d at 966.

19        The evidence was strong that the accident was caused by Petitioner's attempt to exit the

20  freeway in a dangerous manner as a result of his intoxicated state, rather than by Evans grabbing

21  the steering wheel.  Petitioner's blood alcohol level when tested about 7:00 p.m. was 0.06, and

22  an expert witness testified that under the most conservative calculations of absorption rates of

23  0.015/hour, his blood alcohol content was about 0.09 when the accident occurred at 5:00 p.m.,

24  and therefore over the legal limit at the time of the accident.  (Lodgment No. 3, Reporter's Tr.

25  at 186.)  Although the jury was unable to reach a verdict on count two, which charged Petitioner

26  with driving with a blood alcohol of 0.08 percent or more, Petitioner was observed to be

27  unsteady on his feet with bloodshot eyes and having an odor of alcohol when contacted by the

28  police a few minutes after the accident.  (Id. at 219-20.)  However, aside from the evidence that

1  Petitioner's ability to drive safely was impaired, there was strong evidence of consciousness of

2  guilt, which is inconsistent with the accident having been caused by Evans grabbing the steering

3  wheel.  Petitioner fled the scene immediately after the accident, ostensibly to summon help, but

4  when he used a telephone a few minutes later at a nearby store, he called a friend to come get

5  him rather than the police or emergency services.  (Id. at 256.)  When confronted by the police

6  while waiting for the friend to pick him up, Petitioner said he had taken a bus from Oceanside

7  to some nearby apartments where he had been in a fight, had walked away from the apartments

8  and had called for a friend, and was waiting to be picked up. (Id. at 220-21.) Petitioner admitted

9  at trial that he had lied to the police when first confronted after the accident.  (Id. at 275-78.)

10  Petitioner's credibility was severely impeached not only by his actions at the scene and his lies

11  to the police, but by his admission at trial that he had prior convictions for grand theft and

12  attempted burglary, and his admission that at the time of the accident he was driving on a

13  suspended license.  (Id. at 261-62, 271.)  The jury obviously did not believe Petitioner's

14  explanation that he went for help and was not thinking straight due to a head injury sustained in

15  the accident, because the jury found him guilty of hit and run driving.

16      In addition to the evidence that Petitioner acted as though the accident was his fault, an

17  eyewitness, a passenger in a car which was traveling between 55 and 65 miles per hour in the

18  number two lane (the middle lane of the three lanes of traffic), testified that the car driven by

19  Petitioner in the number one lane, which was going "much, much faster,"  passed them on their

20  left, and barely missed hitting them as it skidded across the three lanes of the highway and struck

21  the van.  (Id. at 83-86.)  The witness said he could see Petitioner's hands on the steering wheel

22  "fighting it or turning it" and "cranking" the steering wheel in what looked like an attempt to

23  make the off-ramp.  (Id. at 86.)  The prosecutor argued to the jury that this testimony established

24  that Petitioner had turned the wheel himself.  (Id. at 308.)  Defense counsel argued that this

25  testimony was consistent with Petitioner's testimony that he was fighting with the wheel to turn

26  it back after Evans had grabbed it.  (Id. at 321.)  The prosecutor argued in rebuttal that the more

27  reasonable explanation for the accident was that Petitioner's judgment was impaired because he

28  was intoxicated, and that he cranked the steering wheel in order to make the off ramp without

considering the danger to the other vehicles on the road.  (Id. at 331-32.)  The prosecutor also argued that Evans' grabbing the wheel and causing the accident was inconsistent with Petitioner's actions of running away from the scene, leaving his girlfriend bleeding and injured, and lying to the police when confronted.  (Id. at 331-36.)

If defense counsel had confronted Evans with the letter at trial, and Evans had denied writing the letter, or said she did so only to help Petitioner, it would have weakened the defense for at least two reasons.  Just as defense counsel stated in his declaration, it would have confirmed to the jury that Evans could not be believed on the issue.  Since she testified that she might have grabbed the wheel, any attack on her credibility would harm the defense.  Secondly, it might appear to the jury that Petitioner was trying to manufacture evidence, further weakening his defense which was already weak due to his lack of credibility and the evidence of consciousness of guilt.  On the other hand, if Evans had admitted writing the letter, her testimony was still that she did not at the time of trial remember grabbing the wheel, but that she might have.  Impeaching her with the letter would have, at best, highlighted the issue regarding Evans' memory, and would have added little to what Evans testified to at trial and told defense counsel before trial, that she was having difficulty remembering what happened due to her injuries.  Moreover, the prosecutor argued to the jury that Evans had a stake in the case because Petitioner is the father of her child, and that she might not have been forthright about her memory because she did not want to make things worse for Petitioner.  (Id. at 336.)

Thus, the letters which Petitioner contends were available to trial counsel before trial, even if they had been used to impeach Evans, would have added little or nothing to the evidence already before the jury that Evans may have grabbed the steering wheel but could not remember, and could have potentially weakened her already unstable credibility, which had already been attacked by the prosecution.  In light of the strength of the prosecution's case that the accident was caused by Petitioner's state of intoxication, and in particular the evidence of consciousness of guilt by Petitioner and his severely impeached credibility, there is no reasonable probability that the outcome of the case would have been different had defense counsel used the letter to impeach Evans at trial.  Strickland, 466 U.S. at 694; Luna, 306 F.3d at 966.  Accordingly, the

-17-

1    Court finds that Petitioner did not receive ineffective assistance of counsel, and is not entitled

2    to habeas relief as to claim one.

3    **C.      Petitioner is not entitled to habeas relief as to claim two.**

4            In claim two, Petitioner contends that newly discovered evidence, which consisted of

5    letters written by Evans accepting responsibility for the accident, warrants a new trial.  (Pet. at

6    7.)  Respondent does not address this claim, other than to note that although Petitioner "also

7    argues that newly discovered evidence further supports his claims, he recognizes that the crux

8    of this so-called new evidence 'has been available all along.'"  (Ans. Mem. at 6.)

9            Petitioner presented claim two to the state supreme court in a habeas petition.  (Lodgment

10   No. 15 at 16-19.)  That petition was denied by an order which stated in full: "Petition for writ

11   of habeas corpus DENIED."  (Lodgment No. 16, <u>In re Noble</u>, No. S136148, slip op. at 1 (Cal.

12   June 14, 2006).)  Claim two was also presented to the state appellate court in a habeas petition.

13   (Lodgment No. 13 at 11-14.)   That petition was denied on the merits in a written order.

14   (Lodgment No. 14, <u>In re Noble</u>, No. D046401 (Cal. Ct. App. July 11, 2005).)  The appellate

15   court, however, appeared to ignore this claim, stating simply that: "The other letters Noble

16   attached to his petition are undated, unsigned, in various differing handwriting and/or generated

17   after judgment was pronounced.  Noble has not shown that but for counsel's purported errors,

18   he would have achieved a more favorable result."  (Lodgment No. 14, <u>In re Noble</u>, No.

19   D046401, slip op. at 2.)  The record does not contain a copy of the habeas petition filed in the

20   trial court.  However, the trial court did not address this claim in denying the habeas petition.

21   (<u>See</u> Lodgment No. 15, Ex. M, <u>In re Noble</u>, No. HCN0756, slip op. at 1-3.)

22           Because there is no lower court opinion addressing claim two, the Court will conduct an

23   independent review of the record in order to determine whether the state supreme court clearly

24   erred in its application of controlling federal law when it denied this claim without a statement

25   of reasoning.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002); <u>Greene v. Lambert</u>, 288

26   F.3d 1081, 1089 (9th Cir. 2002) ("(W)hile we are not required to defer to a state court's decision

27   when that court gives us nothing to defer to,  we must still focus primarily on  Supreme  Court

28   / / /

1  cases in deciding whether the state court's resolution of the case constituted an unreasonable

2  application of clearly established federal law.").

3  The evidence Petitioner contends was discovered after trial, begins with the letter dated

4  June 24, 2002, signed by Evans and containing a phone number and a fax number, which was

5  given to the trial judge prior to sentencing. As quoted above, the letter states in relevant part:

6  "Please don't punish him for something that was my fault in more was [sic] than one."

7  (Lodgment No. 2, Clerk's Tr. at 9-10.) The trial judge took the letter into consideration at the

8  July 22, 2002, sentencing hearing, along with a letter from the driver of the van who indicated

9  that she forgave Petitioner and did not want to see him punished harshly. The trial judge reduced

10  slightly Petitioner's sentence based on the letter by Evans and by the driver of the van, both of

11  whom stated a desire not to impose additional punishment based on their injuries. (Lodgment

12  No. 3, Reporter's Tr. at 375-79.)

13  Petitioner presents here, as he did in the state supreme court habeas petition, additional

14  letters written by Evans. These consist of two notarized letters signed by Evans and dated

15  September 23, 2002 and September 23, 2003, both of which indicate Evans caused the accident

16  by grabbing the steering wheel. (Lodgment No. 15, Exs. D-F; Pet.'s Mot. for Evidentiary

17  Hearing Exs. D-F.) Petitioner also presents a hand-printed letter dated January 4, 2004,

18  addressed to "your Honor," a hand-printed undated letter addressed to Petitioner, two hand-

19  printed letters dated September 1, 2002 and September 8, 2002, addressed to Petitioner, and a

20  hand-written letter dated February 10, 2005, addressed to the trial judge. (Lodgment No. 15,

21  Exs. G-N; Pet.'s Mot. for Evidentiary Hearing, Exs. G-N.) Petitioner contends that: "For several

22  years now Ms. Evans has expressed her sincere desire to 'set things right,' but the lower

23  reviewing courts have refused to listen. It would be a miscarriage of justice to allow a

24  conviction to stand when there exists proof that evidence contradicting the convictions has been

25  available all along." (Pet. at 7.)

26  To the extent this claim is to be liberally construed as a claim of actual innocence,

27  Petitioner is not entitled to habeas relief. In order to establish actual innocence, Petitioner must

28  demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror

1    would convict him.  Schlup v. Delo, 513 U.S. 298, 327-28 (1995).  "'[A]ctual innocence' means

2    factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623

3    (1998).  "In other words, the Government is not limited to the existing record to rebut any

4    showing that petitioner might make."  Id. at 623-24.

5         Petitioner testified at trial, and defense counsel argued to the jury, that Evans grabbed the

6    steering wheel and caused the accident.  Evans testified at trial that she might have grabbed the

7    wheel but could not remember.  Given her motive to fabricate a memory post-trial to help

8    Petitioner, the father of her child, and in light of the strong evidence discussed above that the

9    accident was caused by Petitioner's state of intoxication, including Evans' testimony that she

10   may have grabbed the wheel but could not remember, the letters do not establish that, in light

11   of all the evidence, it is more likely than not that no reasonable juror would now convict

12   Petitioner.  Schlup, 513 U.S. at 327-28.

13        To the extent this claim can liberally be construed as challenging the ruling of the state

14   courts on the basis that Petitioner's fundamental right to due process was violated, habeas relief

15   is also unavailable.  State court rulings do not give rise to claims cognizable on federal habeas

16   proceedings unless the ruling violated Petitioner's due process right to a fair trial.  Estelle v.

17   McGuire, 502 U.S. 62, 70 (1991).  "[T]he mere existence of newly discovered evidence relevant

18   to the guilt of a state prisoner is not a ground for federal habeas relief.  More is needed.  It must

19   be shown that the newly discovered evidence would probably have resulted in the defendant's

20   acquittal."  Gordon v. Duran, 895 F.2d 610, 614-15 (9th Cir. 1990).  See also Swan v. Peterson,

21   6 F.3d 1373, 1384 (9th Cir. 1993) ("Newly discovered evidence is a ground for federal habeas

22   corpus relief only when it bears on the constitutionality of an applicant's conviction. . . . and

23   would probably produce an acquittal."), citing Herrera v. Collins, 506 U.S. 390, 400 (1993) and

24   quoting Harris v. Vasquez, 949 F.2d 1497, 1523 (9th Cir. 1990).  In order to establish a due

25   process violation, Petitioner must show that the state court's ruling was so prejudicial that it

26   rendered his state court proceedings fundamentally unfair.  Ortiz-Sandoval v. Gomez, 81 F.3d

27   891, 897 (9th Cir. 1996); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

28   / / /

1    Petitioner has failed to establish that he would probably have been acquitted had the new

2    evidence been presented at his trial for the reasons discussed above with respect to claim one.

3    Neither can Petitioner establish "fundamental unfairness" resulting from the refusal of the state

4    courts to grant him a new trial based on the post-conviction letters.  Evans testified at trial that

5    she may have grabbed the steering wheel but could not remember.  The fact that she became

6    willing to certify (or testify) only after Petitioner was convicted and sentenced that she

7    remembers doing so, does not establish unfairness of the state court proceedings.  The jury heard

8    arguments regarding Evans' motive to fabricate such a story, and was presented with Petitioner's

9    testimony and the testimony of an eyewitness on the issue.  This evidence, coupled with the

10   evidence discussed above regarding Petitioner's actions showing a consciousness of guilt and

11   his lack of credibility, makes it clear that an admission by Evans that she grabbed the wheel,

12   even if it had occurred at trial, would not necessarily have affected the outcome of the trial.

13       Accordingly, based on an independent review of the record, the Court finds that the silent

14   denial of claim two by the state supreme court was neither contrary to, nor involved an

15   unreasonable application of, clearly established federal law, and was not based on an

16   unreasonable determination of the facts in light of the evidence presented in the state court

17   proceedings.  The Court therefore recommends that habeas relief be denied as to claim two.

18   **D.     Motion for an evidentiary hearing.**

19       Finally, Petitioner requests the Court conduct an evidentiary hearing in order to

20   "determine once and for all the full weight of the evidence submitted by petitioner in support of

21   his claims."  (Pet.'s Mot. for Evidentiary Hearing at 2-3.)  Based on the finding in this Report

22   that, even assuming the letters written by Evans were authentic and assuming defense counsel's

23   performance in failing to authenticate the letters or use them at trial amounted to deficient

24   performance, as Petitioner alleges, Petitioner is not entitled to habeas relief, the Court

25   recommends that Petitioner's request for an evidentiary hearing be denied.  See Bashor v. Risley,

26   730 F.2d 1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is not required on

27   issues which can be resolved on the basis of the state court record).

28   / / /

# VI.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **August 31, 2007** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  August 6, 2007

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

-22-

06cv1625